UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

MICHAEL EVAN KEELING,

                Petitioner,

  – against –

BEN VARNER, Superintendent,
Dallas Correctional Facility, s/h/a NASSAU
COUNTY SUPREME COURT,

                Respondent.

---------------------------------X

MEMORANDUM ORDER
& JUDGMENT
99-CV-6565 (JBW)
03-MISC-0066 (JBW)

JACK B. WEINSTEIN, Senior District Judge:

A hearing in this matter was scheduled for August 7, 2003, at 2 p.m. The record in this matter is complete and no hearing is necessary. The petition for a writ of habeas corpus is denied. This memorandum addresses petitioner's claims.

I.    Facts

In the spring of 1994, petitioner committed a series of armed robberies at fast-food restaurants and stores. Petitioner's *modus operandi* was to hold up the restaurant or store manager at gunpoint and force him to open the safe. After stealing several thousand dollars, petitioner, and in some cases an accomplice, fled. During one of these robberies, petitioner shot a restaurant manager in the face at point-blank range. The instant petition concerns petitioner's subsequent conviction with respect to these crimes.

On June 20, 1994, petitioner was indicted in Nassau County for crimes committed on September 28, 1993. In November 1994, petitioner was arrested in Philadelphia, Pennsylvania, for crimes committed there. On December 21, 1994, he was indicted in Nassau County for the



crimes committed in the spring of 1994. On January 25, 1995, petitioner was indicted in Westchester County for attempted murder and other charges.

On February 2, 1995, Westchester County lodged a detainer against petitioner pursuant to the Interstate Agreement on Detainers ("IAD"), codified in New York at N.Y. Crim. Proc. Law section 580.20. On August 18, 1995, after petitioner had been convicted and sentenced on the Pennsylvania charges, Nassau County lodged a detainer against petitioner with the Pennsylvania authorities for the crimes committed on September 28, 1993. Nassau County never filed a detainer against petitioner for the crimes committed in the spring of 1994.

On October 2, 1995, Westchester County filed a "request for temporary custody" with the Pennsylvania authorities, pursuant to Article IV(a) of the IAD. On October 24, 1995, petitioner executed a request for final disposition of indictments under IAD article III with respect to the Nassau County detainer (for the September 28, 1993 crimes) and the Westchester County detainer. On November 27, 1995, petitioner was released to Westchester County authorities to stand trial there.

On January 4, 1996, the Pennsylvania facility where petitioner was incarcerated faxed to the Nassau County District Attorney's Office an incomplete copy of petitioner's request for final disposition. Only one page of the two-page document was sent and it contained neither signatures nor the date of its execution. The Pennsylvania authorities also did not send an offer to deliver temporary custody as required by IAD article V(a).

Petitioner was produced in Nassau County for arraignment on February 26, 1996 and again on June 20, 1996. However, Nassau County did not take custody of petitioner until July 25, 1996, after he was tried and sentenced for his crimes in Westchester County.

On October 20, 1996, petitioner sought to dismiss all Nassau County indictments. He argued that he had not been brought to trial within 180 days of when he delivered to the prosecuting officer his request for final disposition, as required by Article III of the IAD. Petitioner also argued that the Nassau County prosecution was untimely under Article IV of the IAD because he was not brought to trial within 120 days of being brought to New York. On November 7, 1996, during the pendency of petitioner's motion, the State for the first time received from Pennsylvania authorities a complete set of the papers required to trigger the 180-day speedy trial requirement of Article III of the IAD. In a written decision dated January 31, 1997, the trial court denied petitioner's motion to dismiss the indictments.

Petitioner's trial in Nassau County for the charges stemming from the criminal acts committed in the spring of 1994 began on March 3, 1997. Prior to trial, the court held a *Sandoval* hearing. *See People v. Sandoval*, 34 N.Y.2d 371 (N.Y. 1974). At the hearing, the prosecutor advised the court that petitioner had been convicted of several crimes, and that if he took the stand the People would seek to cross-examine him regarding those crimes. *See Sandoval* Hearing Transcript ("*Sandoval* Tr."), at 9. The crimes about which the prosecution sought to cross-examine petitioner are as follows:

1) In 1982 petitioner pled guilty to first degree assault stemming from an incident in which he and accomplices broke into a home and shot an occupant to death while committing a robbery. *See id.* at 9-10.

2) In 1985, petitioner was convicted of criminal sale of a controlled substance in the third degree. *See id.* at 10.

3) In 1995, petitioner was convicted in Philadelphia of two counts of aggravated assault

3

and robbery of a motor vehicle. Petitioner was detained by Philadelphia police, patted down, and put in a police car. He got out of the car, and opened fire on two police officers. He then entered a car stopped at a red light, throwing the driver to the ground. *See id.* at 12-13.

4) In 1996, petitioner was convicted in Westchester County of attempted murder in the second degree, attempted assault in the first degree, reckless endangerment in the first degree, criminal possession of a weapon in the second and third degrees, and attempted robbery in the first and second degree. Petitioner and an accomplice entered a Roy Rogers in Mount Vernon, New York and attempted a stick up. A firefight erupted between the two men and a plainclothes security officer. Petitioner and the accomplice fled. *See id.* at 11.

The prosecution's Nassau County case included the testimony of numerous eyewitnesses and police officers. Several of the prosecution's witnesses were able to identify petitioner as the perpetrator of the robberies and hold-ups. *See* Respondent's Brief before the Appellate Division, Second Department ("Respondent's App. Div. Brief"), at 3-11. Petitioner did not testify.

Because petitioner had threatened to escape and had expressed an interest in procuring a gun, he was handcuffed and shackled. At petitioner's counsel's insistence, and over the objection of the prosecutor, the trial court ordered the petitioner's handcuffs be removed when he was in the presence of the jury to avoid prejudice. During the trial, both counsel tables had aprons around them which concealed petitioner's shackles from the jury. The trial court noted on the record that both counsel tables looked identical and that the jury could not see petitioner's feet. *See* Trial Transcript ("Tr."), at 4.

At the close of the People's case, one of the counts relating to the robbery of a Dairy Barn store in Nassau County was dismissed on consent. The jury found petitioner guilty of three

Nassau County counts of robbery in the first degree (of the Uniondale Roy Rogers, the Great American Drug Store, and the Westbury Roy Rogers) and one count of assault in the second degree (on the manager of the Westbury Roy Rogers). Petitioner was acquitted of two counts of robbery (of the North Lawrence Roy Rogers and a Kentucky Fried Chicken restaurant). The jury could not reach a verdict concerning the robbery of an Optimo Cigars store and a mistrial was declared as to that count. *See* Respondent's App. Div. Brief, at 13-14.

Petitioner had previously been adjudicated a prior felony offender. He was sentenced to twelve and one-half to twenty-five years' imprisonment on each of the robbery convictions and three and one-half to seven years' imprisonment on the assault conviction. The sentences were ordered to run consecutively except that petitioner's sentence for the assault conviction was ordered to run concurrently with the sentence for the robbery arising out of the same incident. Petitioner's sentences were ordered to run consecutively to sentences previously imposed in Westchester County and Philadelphia, Pennsylvania.

Petitioner appealed to the Appellate Division, Second Department. He raised four claims: 1) that the trial court had issued an erroneous *Sandoval* ruling; 2) that his trial was not timely because it was not commenced within 180 days as required by IAD article III; 3) that he was denied the effective assistance of counsel by virtue of his counsel's failure to seek a hearing regarding the shackling of petitioner's feet; and 4) that the evidence was legally insufficient.

The Appellate Division affirmed petitioner's conviction. *See People v. Keeling*, 682 N.Y.S.2d 359 (N.Y. App. Div. 2d Dep't 1998). It held that petitioner's insufficiency of the evidence claim was unpreserved for appellate review, and that in any event the claim lacked merit. The Appellate Division then summarily disposed of the rest of petitioner's claims, stating,

"defendant's remaining contentions are without merit." *Id.* at 359. Petitioner's application for leave to appeal was denied by the Court of Appeals. *See People v. Keeling*, 92 N.Y.2d 1034, 707 N.E.2d 454 (N.Y. 1998) (Bellacosa, J.). Petitioner then sought a writ of certiorari from the United States Supreme Court. The petition was denied on May 17, 1999. *See Keeling v. New York*, 526 U.S. 1119 (1999).

In October 2000, petitioner filed a motion to vacate the judgment pursuant to section 440.10 of New York Criminal Procedure Law. He asserted claims of ineffective assistance of trial counsel and prosecutorial misconduct during summation. *See* Petitioner's Application to Amend Hebeas [sic] Corpus Petition or, in the Alternative to Withdraw Same Without Prejudice to his Right to File a Second Amended Petition after Exhaustion of State Remedies ("Application to Amend"), at 2. In particular, petitioner argued that trial counsel failed to have petitioner testify before the grand jury, failed to object to the prosecution's allegedly improper cross-examination questions; and failed to take notes during a court-ordered lineup. The motion was denied by the trial court on February 14, 2001 without a hearing. The state trial court held that petitioner's claims were procedurally barred because they ought to have been presented on direct appeal. Petitioner's appeal of the denial of his motion to vacate judgment was denied by the Appellate Division on June 15, 2001.

II.     Habeas Corpus Petition

Petitioner timely filed a petition for a writ of habeas corpus in late 1999. The petition raises substantially the same arguments as were made before the Appellate Division, except that in his habeas petition petitioner additionally claims that he was denied a speedy trial in violation of IAD article IV, not III. In July 2001, petitioner filed a motion to file an amended petition in

6

order to add the claims he had made, and which were rejected, in his section 440.10 motion. By a Memorandum and Decision dated March 29, 2002, petitioner's motion was granted. Consequently, the arguments made in the section 440.10 motion are incorporated into the habeas petition.

III.   Law

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). "The fact that a state court decision on the merits is cursory or summary does not vitiate the fact that the issue was adjudicated for purposes of AEDPA." *Francolino v. Kuhlman*, 224 F. Supp. 2d 615, 625-26 (S.D.N.Y. 2002). "Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process. Nowhere does the statute make reference to the state court's process of reasoning." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001).

Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of

7

law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

IV. <u>Claims</u>

    A.    Violation of the Interstate Agreement on Detainers

Petitioner contends that his speedy trial rights were violated because he was not tried in accordance with the IAD. In particular, petitioner alleges that his trial was not timely under IAD Article IV(c) (which petitioner mistakenly cites as III(c)) because his trial was not commenced within one hundred twenty days of his arrival in the receiving state–New York. Respondent argues that this contention was not presented on direct appeal. Instead, on direct appeal petitioner argued that his trial was not timely under IAD Article III(a), which requires that a prisoner be brought to trial within 180 days of when he filed a request for final disposition. Because petitioner did not raise an IAD Article IV(c) argument on direct appeal, respondent contends the claim is unexhausted and procedurally barred.

In part due to appellate counsel's erroneous citation of IAD Article IV instead of III in petitioner's Appellate Division brief and in part due to petitioner's *pro se* status, it is not clear which article of the IAD petitioner is now basing his argument on. Because this claim is not cognizable on habeas review, this court need not determine whether or not the claim is procedurally barred. In *Reilly v. Warden*, a state prisoner filed a petition for federal habeas corpus relief based on an alleged violation of IAD Article IV(c)–the same provision apparently in question here. 947 F.2d 43, 44 (2d Cir. 1991) (per curiam). The Second Circuit Court of Appeals affirmed the district court's dismissal of the petition because "a violation of the IAD is not a ground for relief under Section 2254." *Id.* at 44.

More recently, in *Reed v. Farley*, 512 U.S. 339 (1994), the Supreme Court left open the question of whether federal habeas review is available for alleged violations of the IAD's speedy trial rules. *See id.* at 355. The Court held that the defendant in that case did not meet the fundamental defect standard in part because he suffered no prejudice. *See id.* at 353. In the instant case, none of petitioner's numerous submissions explains how the purported delay in beginning his trial prejudiced him in any way. Consequently, petitioner's IAD claim must be rejected on the merits even were it not unexhausted or procedurally barred.

B.   Insufficiency of the Evidence

Petitioner claims that his guilt was not proven beyond a reasonable doubt. In his Memorandum in Support, petitioner argues that discrepancies in the descriptions of the suspect given by victims indicates that the evidence upon which he was convicted was insufficient. Respondent notes that this claim was not raised at trial when counsel moved for an order of dismissal. The claim lacks merit.

The relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997).

The prosecution's case included testimony by numerous eyewitnesses and police officers. Evidence of petitioner's guilt was overwhelming. The fact that some descriptions of the suspect may have been at odds with others provides a credibility issue for the jury. The entire record indicates that when the evidence is viewed in the light most favorable to the People, a reasonable juror could have found petitioner guilty beyond a reasonable doubt. Consequently, this claim is rejected.

C. *Sandoval* Ruling

Petitioner claims that the trial court erred in making its *Sandoval* ruling. Because petitioner did not testify at trial, this claim is not cognizable on habeas review. *See Luce v. United States*, 469 U.S. 38, 43 (1984) ("to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"); *Grace v. Artuz*, No. 00-CV-1441, 2003 U.S. Dist. LEXIS 6969, at *26 (E.D.N.Y. Apr. 22, 2003) ("petitioner's claim as to the impropriety of the *Sandoval* ruling does not raise a constitutional issue cognizable on habeas review").

D. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In short, a petitioner must show both deficient performance and resulting prejudice. However, the reviewing court must be guided by the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

1. Failure to Request a Hearing or Object to Petitioner Being Shackled

Petitioner claims his counsel was ineffective for failing to object to petitioner being shackled at trial. This claim fails. Petitioner fails to prove either deficient performance or prejudice. Petitioner's counsel did object to his client being shackled and cuffed during the *Wade* hearing. *See Wade* Hearing Tr., at 14-15. At trial, petitioner's counsel noted that while petitioner's shackled feet were concealed by an apron, the jury could still see that he was

11

handcuffed. The trial judge, over the prosecutor's objection, ordered that petitioner's handcuffs be removed. Petitioner's counsel did not renew his objection to the shackles.

Petitioner's counsel's performance was not deficient. He was successful in convincing the trial judge to order petitioner's handcuffs removed despite the fact that petitioner had threatened to escape. Petitioner's counsel reasonably calculated that the trial judge was determined to keep petitioner in shackles because of his threat to escape, and that demanding a hearing on the matter would be fruitless and antagonize the judge. Second, petitioner suffered no prejudice. The trial court noted on the record, as did petitioner's counsel, that the jury could not see petitioner's shackled feet because of the apron. Therefore, the jury was not prejudiced in any way. While petitioner did raise concerns about the jury seeing or hearing the shackles, *see* Trial Tr. at 265, 843, the trial court dismissed them.

2.  Failure to Permit Petitioner to Testify Before the Grand Jury

Petitioner claims his counsel was ineffective because he did not inform him of his right to testify before the grand jury. Whether or not this claim is exhausted, it lacks merit. Claims regarding the conduct of the grand jury are not cognizable in a habeas proceeding where a petit jury has heard the evidence and convicted defendant. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989). Counsel was not ineffective in this regard. Petitioner's fair trial and due process rights were not infringed.

3.  Prosecutorial Misconduct

Petitioner claims his counsel was ineffective because he failed to object to improper questions asked by the prosecution. This claim, too, lacks merit.

Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction

12

only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). Nonetheless, "when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) (citing *DeChristoforo*, 416 U.S. at 643). Inquiry into the fundamental fairness of a trial requires an examination of the effect of any misconduct in the context of the entire proceedings. *DeChristoforo*, 416 U.S. at 643. In order to view any prosecutorial misconduct in context, "we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted).

Petitioner, in his Application to Amend, cites one instance where the prosecutor purportedly elicited testimony from a police detective that petitioner was previously arrested in Philadelphia. In fact, it was petitioner's counsel who asked the question.

> MR. McCORMACK [Petitioner's Counsel]: Okay. Do you know if Detective Hillman ever told any of these witnesses that a suspect had been arrested in Philadelphia?
>
> DETECTIVE BARRY: I was on vacation when this contact was made.
>
> MR. McCORMACK: Did you ever tell any of these witnesses that a suspect had been arrested in Philadelphia?
>
> DETECTIVE BARRY: No.

13

> MR. McCORMACK: Okay. Did you ever tell them that the person who committed the robberies was arrested and was going to standing in the lineups; did you ever tell them that?
>
> DETECTIVE BARRY: No.

Trial Tr. at 755-56. Petitioner's counsel had a legitimate strategy in asking those questions; namely, to determine whether Detective Barry had prejudiced witnesses prior to the lineups. Thus, his performance was not defective. Petitioner also did not suffer any prejudice because the weight of evidence against him was overwhelming.

Petitioner also contends that his trial counsel failed to object to unspecified instances of prosecutorial misconduct during summation. *See* Application to Amend, at 5. A review of the People's summation, Trial Tr. 878-918, demonstrates that defense counsel was not ineffective for not registering objections. In any event, prior to summations the trial court instructed the jury that summations are not evidence. *See* Trial Tr. at 856-57.

4.  Petitioner's Counsel's Failure to Take "Adequate" Notes During the Lineup

Petitioner's final argument is that his counsel was ineffective because he failed to take "adequate" notes during a lineup. Application to Amend, at 2. Whether or not the claim is procedurally barred, as respondent contends, it lacks merit. Petitioner fails to demonstrate how he was prejudiced by his counsel's alleged failure to take "adequate" notes. As noted, the evidence at trial was overwhelming. Petitioner presents no legal or factual basis for his claim that counsel's purported failure to take "adequate" notes affected the outcome of the trial. The claim is frivolous.

V.  Conclusion

The petition for a writ of habeas corpus is denied. A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Although none of petitioner's claims warrants habeas corpus relief, the court grants a certificate of appealability with respect to the alleged violations of the Interstate Agreement on Detainers.

Petitioner makes no substantial showing of the denial of a constitutional right with regard to his remaining claims. No certificate of appealability is granted as to any other claim.

This opinion complies with *Miranda v. Bennett*, 322 F.3d. 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 123 S.Ct. 1029 (2003).

SO ORDERED.

Jack B. Weinstein
Senior District Judge

Dated:   June 17, 2003
         Brooklyn, NY

15